UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JOSEPH JACKSON,<br>     *Defendant.* | No. 3:10-cr-00227 (KAD) |

**ORDER GRANTING [DOC. #2582] MOTION FOR COMPASSIONATE RELEASE**

Joseph Jackson has moved, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), for an order of compassionate release from confinement in light of—in combination—the "excessive and disproportionate" sentence he received; his incarceration during the COVID-19 pandemic; the sentencing disparities between himself and his co-defendants; and his rehabilitative efforts over the course of the last 14-plus years.

The Government defers to the Court as to the assessment of Jackson's motion and the applicable statutory factors. For the reasons that follow, the motion is GRANTED.

## BACKGROUND

In early 2013, following a yearslong government investigation, Joseph Jackson pleaded guilty to his role as the drug kingpin behind a significant narcotics trafficking conspiracy. *See* Doc. #1592. Jackson's Presentence Investigation Report (PSR) noted that he had already amassed 18 criminal history points, landing him in Criminal History Category VI. *See* Doc. #1706 at 18 (¶ 62); Doc. #2582 at 3. The Sentencing Guidelines range in the same report, based largely on the quantity of narcotics involved and Jackson's central role in the offense, was "life" imprisonment. *See* Doc. #1706 at 18 (¶ 23). Ultimately, Jackson entered into a plea agreement pursuant to Fed. R. Crim. Pro. 11(c)(1)(C), which called for an agreed-upon sentence of 300 months (25 years). *See* Doc. #1592 at 4.

Jackson now moves for compassionate release from confinement and raises four arguments in support: (1) that Jackson received an "excessive and disproportionate" sentence; (2) that he was incarcerated during the COVID-19 pandemic, which caused his sentence to be more severe and punitive than anticipated; (3) that there were disparities between his sentence and those of his co-defendants; and (4) that he has rehabilitated himself over the course of the last 14 years. *See generally*, Doc. #2582.

The Government identifies several flaws with Jackson's arguments, but ultimately "defers to the discretion of this [C]ourt as to whether the defendant has established extraordinary and compelling reasons for a reduction in sentence." Doc. #2589 at 14.

## DISCUSSION

After its amendment by the First Step Act of 2018, 18 U.S.C. § 3582(c)(1)(A), which governs the modification of a term of imprisonment, reads in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, *or upon motion of the defendant* after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment. (emphasis added).

This amendment thus ensured that motions by the Bureau of Prisons were no longer the exclusive avenue by which compassionate release could be considered and adjudicated by the courts. The amended statute further provides that, upon exhaustion of a defendant's administrative remedies,[1] a district court "may reduce" a defendant's term of imprisonment "after considering the factors set forth in section 3553(a)," if it finds "extraordinary and

---

[1] *See United States v. Keitt*, 21 F.4th 67, 71 (2d Cir. 2021) ("[A]bsent waiver or forfeiture by the government, an inmate must exhaust administrative remedies by requesting such relief from prison authorities."). Jackson has exhausted his administrative remedies. *See* Doc. #2582 at 5; Doc. #2589 at 5 n.1.

2

compelling reasons warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the sentencing commission." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Brooker*, 976 F.3d 228, 235 (2d Cir. 2020). The Second Circuit has cautioned that even if extraordinary and compelling reasons for modification obtain, a district court must still find that the Section 3553(a) factors support release. *United States v. Jones*, 17 F.4th 371, 374 (2d Cir. 2021) (explaining that a district court's "reasonable evaluation of the Section 3553(a) factors is an alternative and independent basis for denial of compassionate release" (citation and internal quotation marks omitted)).

From the passage of the First Step Act in 2018 until 2022, the want of a quorum at the United States Sentencing Commission precluded issuance of implementing guidelines regarding prisoner motions. As a result, the Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13, was outdated. *See Brooker*, 976 F.3d at 237 (noting in September 2020 that Section 1B1.13 was "clearly outdated and cannot be fully applicable"). In April 2023, the Commission regained quorum and updated Section 1B1.13, effective November 1, 2023.

This update reflects a defendant's ability to seek compassionate release on his own and includes the prerequisites necessary and examples of circumstances that might warrant such relief. These include—though not applicable here—terminal illness, deteriorating health of an elderly inmate, or the need to care for minor children in light of the death or incapacitation of their caregiver. *See* U.S.S.G. § 1B1.13(b)(1)-(4). The Sentencing Commission also included an "Other Reasons" catch-all provision that gives courts discretion to grant relief in extraordinary cases not explicitly listed. *See id.* § 1B1.13(b)(5) ("The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together

3

with any of the reasons described in subdivisions (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).").

Here, Jackson first argues that his sentence—for a non-violent drug offense—was excessive at the time it was imposed[2] and is excessive under contemporary standards such that if sentenced today, he would not receive a 25-year sentence. *See* Doc. #2582 at 7-13. He points the Court to statistics that put the current average sentence for murder at lower than 25 years. *Ibid.* But given Jackson's criminal history and the central role he played in a substantial narcotics trafficking organization, and given an advisory Guideline range of "life," the Court is hard pressed to conclude—and therefore does not conclude—that the sentence was unreasonable or excessive at the time it was imposed. Indeed, as has already been assessed in response to prior motions, even if Jackson had the benefit of subsequent Guidelines amendments, his 300-month sentence still fell below the adjusted Guidelines range. *See* Doc. #1949 at 3; Doc. #2185.

That said, based upon this Court's experience, absent a binding plea agreement, and with an applicable Guideline range of 360 months to life, the Court believes that Jackson's sentence would likely be lower than 300 months if imposed today. *See, e.g.*, Doc. #2582 at 26 (citing recent decisions such as *United States v. Lespier*, 2025 WL 213732, at *3 (D. Conn. 2025), and *United States v. Suggs*, 2021 WL 2661874, at *7 (D. Conn. 2021), for the proposition that "the Court and society's views of the human capacity for redemption and what constitutes a fair and

---

[2] Jackson also challenges the Guidelines calculation in the PSR—specifically for its method of calculating the drug quantity at issue in his case. *See* Doc. #2582 at 2. But Jackson does not get to relitigate his sentencing in a motion for compassionate release. Jackson also casts aspersions on prior counsel; the advice he received; and the circumstances giving rise to the binding plea agreement in which he agreed to a 25-year sentence. *See, e.g., id.* at 15. But a compassionate release motion is also not properly supported by vague assertions of ineffective assistance of counsel. The Court considers only the arguments advanced as to the here and the now and does not Monday-morning quarterback the parties—including the judge who ultimately accepted the parties' agreement as to an appropriate sentence.

just criminal sentence have changed significantly since 2013 and continue to rapidly evolve."). But this is not, in and of itself, sufficient to establish extraordinary and compelling reason to grant compassionate release.

Relatedly, Jackson observes that his sentence was far longer than any of his co-defendants, even those that elected to be tried by a jury. *See* Doc. #2582 at 13-15. While the Court can discern sentencing disparities by simply examining the docket, it cannot assess, based upon Jackson's submission, whether such disparities were unwarranted. He was the lead defendant and identified leader of the trafficking organization. His sentence *would* be expected to be longer than most, if not all, of his co-defendants. Further, Jackson had already amassed 18 criminal history points, indicating a lengthy criminal past that would have served as a valid indicium of the need for a lengthy sentence.

In his Reply, Jackson addresses these concerns by conceding his role in the offense as well as his significant criminal history. *See* Doc. #2590 at 8. He then identifies six co-defendants with similar criminal histories and details the applicable Guideline range for each; the sentence imposed on them; and any subsequent reductions in sentence ordered. *See generally id.* at 9-14. The Court agrees with Jackson that the fact that these co-defendants (who are seemingly similarly situated to Jackson) all received substantially lower sentences favors a reduction in his sentence.

Jackson next relies upon the fact that he was incarcerated during the COVID-19 pandemic. *See* Doc. #2582 at 15-19. Although not of itself a basis upon which to grant compassionate release, courts are generally in agreement that incarceration during the pandemic made for harsher conditions than were anticipated at the time of sentencing. *See United States v. Dones*, 2021 WL 6063238, at *3 (D. Conn. 2021) (collecting cases). The Court is aware that out-

of-cell time was significantly reduced, which limited recreation, exercise, programming opportunities, family visits, and more. The fact that several years of Jackson's incarceration were during the pandemic contributes to a finding of extraordinary and compelling reasons for sentence reduction.

The last factor relied upon by Jackson is his maturity, growth, and rehabilitation while incarcerated. *See* Doc. #2582 at 19-22. Jackson is now 49 years old. He has participated in educational as well as vocational programming while incarcerated. He teaches a Bible study course; helps fellow inmates to earn their GEDs; and has held a variety of jobs within the prison system.[3] Jackson has also maintained close family ties with his partner and their children. He also has a release plan that includes stable housing with his partner and their children; he has an offer of employment from the nonprofit organization M.E.G.A., Inc.; and he has a plan to secure health coverage and hopes to engage in substance abuse treatment at MCCA in New Haven.

In a letter to the Court, Jackson writes: "I am blessed with an excellent support system who been [sic] here for me since day one. I simply wish to help raise responsible children and counsel them to make better choices in life then I did." Doc. #2576 at 43. Jackson's partner confirmed in her own letter that he has been an engaged parent, to the extent possible, during his incarceration. The children, quite young when Jackson was first incarcerated, are both teenagers now. While his period of incarceration has not been devoid of disciplinary measures, it appears to the Court that he has made great strides toward personal growth. *See, e.g.*, *United States v. Torres*, 464 F. Supp. 3d 651, 663-64 (S.D.N.Y. 2020) (agreeing that the defendants' "sustained

---

[3] In his 2024 *pro se* sentence reduction motion, Jackson attached multiple letters of support from friends, family and fellow inmates. *See* Doc. #2576 at 43 (Exh. G).

and successful efforts to improve themselves, their families, and their community are commendable" and that their rehabilitative efforts were "extraordinary and compelling").

*In combination*, these four factors provide a compelling and extraordinary reason to reduce Jackson's sentence. *See, e.g.*, *United States v. Almontes*, 2020 WL 1812713, at *5 (D. Conn. 2020) (concluding that "a combination of factors [can] add up to extraordinary and compelling reasons" for compassionate release); *United States v. Hall*, 2024 WL 3718341, at *4 (D. Conn. 2024) (same).

Turning to the Section 3553(a) sentencing factors, the Court concludes that while some weigh against compassionate release, they do not preclude the granting of the motion. To be sure, the Court has concerns regarding whether Jackson will fall into old habits, resume association with negative influences, or simply succumb to the lure of fast money through narcotics trafficking. But the Court is also hopeful that Mr. Jackson has "aged out" of street life; is sincere in his desire to be a present and engaged parent to his children; is committed to working at M.E.G.A., Inc.; and will follow through on his plans to transition to a law-abiding lifestyle.

## CONCLUSION

For all the above reasons, Jackson's motion for sentence reduction is GRANTED. The sentence is reduced to "time served." Jackson shall be released as soon as practicable but no later than 5:00 p.m. on April 11, 2025. Jackson is placed on Supervised Release subject to all conditions previously ordered, but the conditions of Supervised Release are modified as follows: Jackson shall reside with Roxie Joyner, his partner, at her home in Hamden.

Upon his release, Jackson shall travel directly from the facility to this residence. Jackson shall be on home detention for the first six (6) months of Supervised Release. Jackson will be

permitted to leave the residence for employment, religious services, medical treatment, or for other reasons approved in advance by the United States Probation Office. He shall be subject to location monitoring for the first six (6) months of Supervised Release by whatever technology is deemed appropriate by the United States Probation Office.

    The Clerk of Court is directed to provide a copy of this Order to the United States Marshals Service to be transmitted to the Bureau of Prisons. The Clerk of the Court is further directed to provide a copy of the Order to the United States Probation Office.

    It is so ordered.

    Dated at Bridgeport this 7th day of April 2025.

/s/ *Kari A. Dooley*
Kari A. Dooley
United States District Judge